# Beck *versus* Church, Administratrix of Church, Deceased.

An execution cannot be issued by the Court of the county in which the transcript of a judgment is filed under the Act of April 16th, 1840, without a revival there, when none can be issued for want of a revival in the county where the parent judgment remains.

February 24th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, J.J.

ERROR to the Court of Common Pleas of *Lackawanna county*: Of July Term 1885, No. 156.

This was a rule to show cause why an *alias fieri facias* should not be set aside.

On the 21st of October, 1874, W. K. Beck gave D. W. Church his promissory note for $500, due one day after date, containing a confession of judgment. This note Church entered of record in the Court of Common Pleas of Luzerne county on the 31st of July, 1878. On the 30th of August, 1875, Beck paid Church on the judgment $100, and on the 3d day of December, 1875, he paid him on this judgment $50. Neither of these payments were credited on the record.

On the 18th of December, 1884, Church brought a certified copy of the record of this judgment from the Common Pleas of Luzerne county, and filed it in the Court of Common Pleas of Lackawanna county. Without a *scire facias* either in Luzerne or Lackawanna counties he issued a writ of *fieri facias* on this judgment in Lackawanna county, which was returned, *nulla bona*. On the 17th of January, 1885, he issued an *alias fieri facias*. On the 14th of February, 1885, the death of D. W. Church was suggested and the name of Mary A. Church, administratrix, was substituted of record.

Beck filed his affidavit, setting forth the payments on the judgment which had not been credited, and in addition that a *scire facias* had never been issued on the judgment, though more than nine years had now elapsed since the original judgment had been entered, and that he desired to make defence to the same when one should issue, to wit, payment of $150 on the original judgment. On this affidavit a rule was granted to show cause why the *alias fieri facias* should not be set aside.

The Court, ARCHBALD, J., discharged the rule, filing the following opinion:

Judgment was originally entered against the defendant in Luzerne county, July 31st, 1875, and transferred to this county December 18th, 1884. There had been no revival in

the old county, and without any revival here, execution was forthwith issued. This rule was thereupon taken on the ground that no execution could issue until a *scire facias* had gone out and judgment been obtained thereon.

This exact point was ruled by Judge HAND in the case of Crago *v.* Darte, No. 89, April Term, 1883, in this Court where he held that a judgment transferred under the Act of 1840, acquires such a status as a judgment in the county to which it is transferred, that execution may issue thereon, without a preceding *scire facias*, even though the judgment in the original county be over five years old at the time of the transfer.

I cannot agree with this interpretation of the law. But as it would work intolerable confusion to have the judges of this Court ruling differently on a question of practice regulating the conduct of the prothonotary's office, I consider it my duty to be governed in the determination of this case by what has been decided in the case of Crago *v.* Darte, simply expressing my dissent therefrom and the reasons for it.

The Act of 1840 is to be construed in harmony with the Act of June 16th, 1836, regulating executions, where it is provided that no exception shall be issued upon any judgment after the expiration of the period fixed (originally a year and a day, but subsequently enlarged to five years), unless the party defendant shall be first warned by *scire facias*, etc. By the Act of April 16th, 1840, a judgment transferred to another county is to have the same force and effect, and no other, as if originally entered in the Court to which it is thus transferred. The Statute does not give full status to such judgment obtained by transfer. As said by Judge GIBSON, in Brandt's Appeal, 4 Harris, 346, "It is not, then, a very judgment, but a *quasi* judgment, and that, too, only for limited purposes. It is affected with all the weakness of the original, and must stand or fall with it." Nor can such judgment by transfer be itself transferred to another county: Mellon *v.* Guthrie, 15 Pa. St., 116. And it is transferred in its character as a judgment, and not as a lien. Thus, until the recent Act of Assembly, an award of arbitrators could not be transferred until the judgment had become absolute by failure to appeal: Hallman's Appeal, 18 Pa. St. 310. Nor could a verdict docketed as a lien be transferred: Bailey *v.* Elder, 90 Pa. St., 446; nor a decree in equity for the payment of money: Brooke *v.* Phillips, 83 Pa. St., 183.

Now, when a judgment has stood over five years, it will not support an execution until a *scire facias* has issued and been pressed to judgment. If, in such state, it is transferred to another county, it is to have the same force and effect, and no other, as if originally entered in such county. The condition

in which it is, is continued in its transferred state, otherwise it would be given a new force and effect, and one which it did not before possess. In its unrevived condition it had in a certain sense ceased to bind the defendant's person. How could the mere transfer remove this condition, when by the very terms of the Act it is to have no other force and effect than if originally entered in the Court to which it is transferred? Such transfer is said by C. J. LOWRIE, in King *v.* Nimick, 34 Pa. St., 298, to have a strong analogy to a *testatum* execution. But it is clear that no *testatum* could run from an unrevived judgment into another county.

This does not conflict with Knauss's Appeal, 29 Pa. St., 420. The question there was of lien merely, and not of execution. The judgment when transferred was in full life, and the Court simply held that it acquired a lien by its transfer, distinct from and independent of the lien in the old county, so that the expiration there did not affect the judgment as transferred.

But in that very case Judge AGNEW says: "The proceedings to enforce collection [of the transferred judgment] shall be according to the Act of 1836, and, therefore, if the debt is presumed to be paid so as to require a *scire facias*, it must be revived before proceeding to execution."

I should, therefore, hold if the question were *de novo* in this Court, that, while the Act of 1840 allows any judgment to be transferred to another county, it has no other force and effect than if originally entered in such county; and if, at the time of its transfer, it is over five years old, so that no execution could issue thereon, a *scire facias* must issue on the judgment so entered by transfer, and be proceeded in to judgment, before an execution can properly be taken thereon.

But, for the reasons first given, I must discharge this rule.

The defendant thereupon took this writ, assigning for error the judgment of the Court in discharging the rule to set aside the *alias fieri facias*.

*Samuel W. Edgar* (*Lemuel Amerman* with him), for plaintiff in error.

*H. M. Hannah*, for defendant in error.

Mr. Chief Justice MERCUR delivered the opinion of the Court, October 4th, 1886.

The errors assigned arise from the refusal of the Court to set aside an execution issued in the county of Lackawanna, on a judgment transferred from the county of Luzerne. It was recovered there in July, 1875, and transferred in December, 1884. As the judgment had not been revived in the county

[Beck *v.* Church.]

in which it was recovered, and under the statute no execution could issue on it there, did a transfer thereof to another county, nine years after its rendition, authorize an execution thereon to issue forthwith?

The construction of the Act of 1840, authorizing the transfer of judgments to another county, is not entirely free from difficulty. The tendency of the decisions has been to restrict the effect of the judgments thereby created. Hence it was held in Brandt's Appeal, 16 Pa. St., 343, that the record transferred under the Act does not become a very judgment of the Court of the county in which it is entered, but a *quasi* judgment; and that, too, only for limited purposes; that the regularity or merits of it cannot be reviewed elsewhere than in the county in which it was recovered, further than to stay execution. If the original judgment be set aside, the judgment entered on the transcript falls with it. The latter is not an independent and self-sustaining judgment. Two independent judgments of the very same kind, each binding the person, and each for the same thing, cannot be sustained. If it were otherwise, the payment of one would not be a satisfaction or discharge of the other.

Although the Act of 29th March, 1859, declares that decrees in equity for the payment of money shall be and constitute a lien on the real estate of the defendant named in the decree for the like period and with the same force and effect as the lien of a judgment rendered by and in a common law court of this Commonwealth, and be entered in like manner in the judgment or lien docket of the proper county, yet it was held in Brooke *v.* Phillip, 83 Id., 183, that such a decree cannot be transferred to another county for the purpose of lien and execution as in case of a judgment at law.

To hold that an execution may be issued by the court of the county in which the transcript of the record is filed without a revival there, when none can be issued in the county where the parent judgment remains, would be to sanction a proceeding not within the meaning of the statute, but one in conflict with the spirit of the decisions giving construction thereto.

The learned judge was correct in the reasons which he gave in favor of setting aside the execution, but was wrong in adopting the conclusion of the President Judge in another case.

> Judgment reversed, and rule to show cause why the *alias fi. fa.* should not be set aside, made absolute.